I disagree with the majority's conclusion that the action of the police officers in this case "did not amount to such a show of authority or implied restraint as to amount to a seizure of the petitioner."
In United States v. Beck, 602 F.2d 726 (5th Cir. 1979), officers familiar with almost everyone in the high-crime neighborhood they were patrolling spotted two unfamiliar men sitting in a car with the motor running near a convenience store. The officers then pulled alongside the car. The Fifth Circuit Court of Appeals held that that was a "stop":
 "When Spears and Gober interrupted their patrol by pulling alongside the parked Chevrolet, they clearly took the sort of action contemplated by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in its definition of a 'stop' [seizure]: 'whenever a police officer accosts an individual and restrains his freedom to walk away. . . .' Id. at 16, 88 S.Ct. at 1877."
602 F.2d at 728.
" '[I]n the Fourth Amendment sense, the term "stop" does not mean a physical stop but rather a restraint of movement. Thus, *Page 751 
the fact that the car was already stopped at the time the officers approached is of no moment in the constitutional inquiry.' " Beck, 602 F.2d at 728 n. 1 (quoting United Statesv. Robinson, 535 F.2d 881, 882 n. 2 (5th Cir. 1976).
In the present case, the officers not only approached the parked vehicle and knocked on the window but also boxed in the car with their police cruiser, its bright lights on, by parking either behind or alongside the two cars. Moreover, the petitioner and his companions were not on a public street or the parking lot of a public place; they were at a city park. Although a city park, being a public facility, is certainly open to the public, a person's expectation of privacy is much higher in a city park than at other public places. This expectation of privacy was even recognized by one of the officers who arrested the petitioner. Under these circumstances, I believe that a reasonable person would have believed that he was being restrained. Clearly, the petitioner and the two other men were not free "to walk away." They could not simply ignore the officers and try to drive away. While I am mindful that not every encounter between police officers and citizens constitutes a seizure within the protection of the Fourth Amendment, Terry v. Ohio, 392 U.S. 1, 19, n. 16,88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968), I would hold that the action taken by the officers in this case was the sort of action contemplated by the United States Supreme Court inTerry v. Ohio, i.e., that such action constituted a seizure of the petitioner and his companions.
Because this was a "stop," it was improper unless the officers had a particularized and objective basis for suspecting the petitioner of criminal activity. The testimony did not indicate that this was a high-crime area; the officer testified that there was nothing unusual about cars being parked there late at night; the officers did not see any signs of criminal activity or any indication that these three men were having automobile trouble. One officer even testified that the reason they stopped and investigated the parked cars was to see "if we could help them with anything or if they were having trouble or what they were doing." (Emphasis added.) To meet the objective test necessary to justify a particular intrusion such as this, good faith on the part of the arresting officer is not enough. Terry, 392 U.S. at 22, 88 S.Ct. at 1880. "This demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." Terry, 392 U.S. at 21 n. 18,88 S.Ct. at 1880 n. 18. As the Fifth Circuit said in Beck:
 "Spears's mere unfounded feeling that something might be afoot did not warrant his stop of the Chevrolet. Had he observed the vehicle for some time and seen Beck or his passenger take some suspicious actions, a stop might have been permissible, but under the facts here we hold the stop was illegal."
602 F.2d at 729.
In this case, the officers did not have a particularized and objective basis for suspecting petitioner of criminal activity. The "knowledge" of the Court of Criminal Appeals from other cases that "secluded outdoor areas . . . have become the location for the commission of violent crime" cannot act as an after-the-fact rationalization for the action of these officers. The reasonableness of a seizure is determined by the circumstances at the inception of an officer's action.Terry, 392 U.S. at 19-20, 88 S.Ct. at 1878-79.
For the above reasons, the trial court was correct in suppressing the evidence seized as a result of this improper stop. Accordingly, I must dissent.
JONES, J., concurs. *Page 752